## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

BENJAMIN E. CLIFTON,

      Plaintiff,

v.

BRANDON J. MIFFLIN, L. MERO,
R. BRIDGES, B. WALLY, J. SROKA,
J. MARNAC, GREGORY D. LITTLE,
KELSEY S. SMITH, CHRISTEL S.
CROW, DIANE SKORCH, BRADLEY A.
KIRKMAN, JOHN M. BARWICK,
RYAN NOTHNAGLE, LATOYA
HUGHES, RICHARD RANSOM,
MAJOR SMITH, SGT. AGNEW, LEAH
STRONG, JACOB GUETERSLOH,
KEVIN REICHERT, CARRI MORRIS,
ANTHONY WILLS, and M. LIVELY,

      Defendants.

Case No. 25-cv-1251-NJR

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Benjamin E. Clifton, an inmate of the Illinois Department of Corrections who is currently incarcerated at Menard Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. In the Complaint, Clifton alleges that his due process rights were violated during several disciplinary hearings.

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any

portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

## The Complaint

On February 15, 2024, Clifton went before the adjustment committee on Disciplinary Report #202400554/1-PNK (Doc. 1, p. 17). Clifton previously listed Correctional Officer ("C/O") Brammeier as a witness on the ticket because he believed that Brammeier could testify that the inmate involved in the incident fought back (evidencing a fight instead of the charged offense of assault) (*Id.*). Brammeier escorted Clifton to the hearing. Clifton pleaded not guilty and notified committee members Gregory D. Little and Diane Skorch of his witness, but Little refused to let the officer testify because he would not use another officer's testimony against an officer (*Id.*). Diane Skorch remained silent, and Clifton contends that his request for a witness was not noted in the final report (*Id.*). He was found guilty and received segregation time as a result. Clifton submitted grievances about the alleged violation of his due process rights, but the grievance was denied by Ryan Nothnagle and Latoya Hughes (*Id.*).

On March 1, 2024, Clifton went to a hearing on Disciplinary Report # 202400749/1-PNK (Doc. 1, p. 18). He pleaded not guilty and refused to sign the papers (*Id.*). The final report noted that he pleaded guilty. The report also lacked the signatures of all the adjustment committee members, including Kelsey S. Smith (*Id.*). Clifton contends that because the findings were not signed by all members, he should not have received the discipline set forth in the report (*Id.*). The other members of the committee included

Gregory D. Little and Christel Crow (*Id.*). Clifton wrote a grievance about this issue, but Ryan Nothnagle and Latoya Hughes again denied the grievance (*Id.*). Clifton believes the disciplinary report should have been expunged due to the issues with the signatures.

On March 29, 2024, Clifton attended a hearing on Disciplinary Report #202401057/1-PNK (Doc. 1, p. 19). He pleaded not guilty and informed Little and Diane Skorch that the employee who wrote the ticket, J. Sroka, failed to sign the report (*Id.*). Clifton argues this failure should have resulted in the ticket being immediately expunged. Instead, he was sent back to his cell and served a revised ticket that included Sroka's signature (*Id.*). On April 5, 2024, Clifton went back before the committee and asked for a continuance in order to obtain administrative directives to support his argument for expungement. On April 9, 2024, he again went before the adjustment committee and argued that the original ticket was incomplete. But the committee members left this argument out of the final summary, making it look like Clifton had no defense to the ticket (*Id.*). Clifton contends that Little violated his due process rights by refusing to expunge the ticket and then failing to note Clifton's defense (*Id.*). He alleges that Diane Skorch acted with deliberate indifference in remaining silent and failing to object to Little's actions (*Id.*). Ryan Nothnagle and Latoya Hughes denied his grievance (*Id.*).

Clifton alleges that because of his disciplinary tickets, he was transferred to Menard and placed in segregation (Doc. 1, p. 20). Clifton fails to note when he was transferred, although an attached grievance indicates he was transferred to Menard on April 24, 2024 (Doc. 1, p. 56). He alleges that he has remained in segregation at Menard

for over a year. During that time, he has been offered access to the yard only once (*Id*.). He has limited access to cleaning supplies, no access to nail clippers, and had access to a razor only once in March 2025 (*Id*.). He has no access to sunlight or outside time and no communications (*Id*.). As a result, he suffers from stress, depression, anxiety, and anger (*Id*.). He expressed the need for mental health services to mental health staff during their weekly walk throughs, but he was never placed on suicide watch or scheduled for a counseling appointment (*Id*.). He submitted a grievance, but on August 30, 2024, Anthony Wills deemed the grievance not an emergency (*Id*.). The following day, August 31, 2024, he was maced for an attempted staff assault, which he believes could have been avoided if his grievance had been labeled an emergency (*Id*.). He alleges that Leah Strong, Carri Morris, J. Guetersloh, and Kevin Reichert refused his requests to schedule a telepsych appointment (*Id*.). Ryan Nothnagle also denied his grievance about mental health services (*Id*.).

After being maced and removed from his cell, Clifton was placed in North 2 segregation—where he remains (Doc. 1, p. 21). He was left in the cell for 10 days without a bed roll. He grieved his access to his property and proper clothing, but Anna Fitzgerald, Kevin Reichert, and Counselor Young denied his grievance (*Id*.). North 2 experiences excessive flooding due to plumbing issues, and without shower shoes, Clifton is forced to step in dirty, feces and urine filled water (*Id*.). Water backs up into his cell and is never cleaned out, and he does not regularly receive cleaning supplies (*Id*.). The water attracts bugs into his cell (*Id*.). As a result, he has contracted athlete's foot, as well as digestion and respiratory issues due to poor ventilation (*Id*.).

## Preliminary Dismissals

Clifton identifies a number of individuals in his case caption but fails to include them in his statement of claim. He identifies Brandon Mifflin, L. Mero, R. Bridges, B. Wally, J. Marnac, Bradley Kirkman, John Barwick, Richard Ransom, Major Smith, Sergeant Agnew, and M. Lively as defendants, but he fails to include any allegations against them in his statement of the claim. Although he lists them as officers who either signed or investigated his various disciplinary tickets, or were involved in the grievance process, Clifton fails to allege that they were personally involved in any alleged constitutional violation. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) ("To recover damages under [Section] 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right."). His vague statements that each individual signed or investigated a disciplinary report is not enough to adequately allege that they participated in the alleged due process violations. *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (noting that a plaintiff must connect each specific defendant to the illegal act). Thus, any potential claims against these individuals are **DISMISSED without prejudice**.

Clifton also alleges that numerous staff are liable because they denied his grievances. He specifically alleges that Ryan Nothnagle and Latoya Hughes denied his grievances or rejected the grievances on various grounds once they reached the Administrative Review Board. He also identifies several prison officials, including Leah Strong, Jacob Guetersloh, Kevin Reichert, Carrie Morris, and Anthony Wills, who either deemed his grievance not an emergency or denied his grievance requesting mental health

care (Doc. 1, pp. 20-21). But the simple denial or mishandling of a grievance by those officials not involved in the underlying constitutional violations fails to state a claim. *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). *See also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996) ("[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause."). Further, to the extent he alleges that these officials failed to provide him with mental health care, Clifton fails to allege when he spoke to each official, what each knew about his need for mental health care, and their response, if any, to his requests for care. A successful complaint generally alleges "the who, what, when, where, and how…" *See DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). Clifton fails to provide any facts suggesting these officials were aware of his need for mental health care and acted with deliberate indifference to that need.

Finally, Clifton identifies Anna Fitzgerald and counselor Young as additional staff members who denied his grievances (Doc. 1, p. 21). Unfortunately, Clifton fails to identify these individuals as defendants in the case caption. *See* FED. R. CIV. P. 10(a); *Myles v. United States*, 416 F.3d 551, 551-52 (7th Cir. 2005). Even if he had properly identified them as defendants, their failure to grant Clifton's grievances or provide him with the items he requested in his grievance fails to state a claim.

## Discussion

Based on the allegations in the Complaint, the Court designates the following counts:

> **Count 1:**    **Fourteenth Amendment due process claim against Gregory Little and Diane Skorch for denying Clifton a witness during his February 15, 2024 hearing on Disciplinary Report # 202400554/1-PNK.**
>
> **Count 2:**    **Fourteenth Amendment due process claim against Gregory D. Little, Kelsey Smith, and Christel Crow for failing to note that Clifton pleaded not guilty and for failing to properly sign the final summary of Disciplinary Report #202400749/1-PNK.**
>
> **Count 3:**    **Fourteenth Amendment due process claim against Gregory Little, Diane Skorch, and J. Sroka for refusing to expunge Disciplinary Report #202401057/1-PNK after Sroka failed to sign the original disciplinary report.**

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[1]

Clifton alleges that his due process rights were violated during the course of three disciplinary hearings. "To succeed on a due process claim stemming from a prison

---

[1] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

disciplinary proceeding, an inmate must demonstrate (1) a constitutionally protected liberty interest and (2) deficient procedures attendant to the deprivation of that interest." *Ealy v. Watson*, 109 F.4th 958, 964 (7th Cir. 2024) (internal citations omitted).

An inmate's liberty interests are protected by the Due Process Clause only insofar as a deprivation of the interest at issue would impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). When looking at placement in segregation, both "the duration of the segregative confinement and the conditions endured" must be considered. *Jackson v. Anastasio*, -- F.4th --, 2025 WL 2437947, at * 6 (7th Cir. Aug. 25, 2025). A short stay in segregation, by itself, does not typically amount to an atypical and significant hardship. *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *Thomas v. Ramos*, 130 F.3d 754, 761-62 (7th Cir. 1997) (two months not enough on its own); *Williams v. Brown*, 849 F. App'x 154, 157 (7th Cir. 2021) (noting that 30 days is not enough); *Beamon v. Pollard*, 711 F. App'x 794, 795 (7th Cir. 2018) (135 days in segregation, absent any atypical and significant conditions, "does not violate the Fourteenth Amendment"); *Lekas v. Briley*, 405 F.3d 602, 612 (7th Cir. 2005) (90 days in segregation did not state a claim); *Croom v. Schoenbeck*, App. No. 24-1875, 2025 WL 957898, at *2 (7th Cir. Mar. 31, 2025) (three months in segregation with access to recreation twice a week, but no tablet, television, commissary food, or cleaning supplies does not implicate a liberty interest).

Due process safeguards that are associated with prison disciplinary hearings include: (1) advance written notice of the charges; (2) the opportunity to appear before an impartial hearing body to contest the charges; (3) the opportunity to call witnesses and

present documentary evidence as a defense (if prison safety allows and subject to the discretion of correctional officers); and (4) a written statement summarizing the reasons for the discipline imposed. *See Wolff v. McDonnell*, 418 U.S. 539, 563-69 (1974). In addition, the decision of the adjustment committee must be supported by "some evidence." *Scruggs v. Jordan,* 485 F.3d 934, 941 (7th Cir. 2007).

**Count 1**

As to Clifton's due process claim with respect to Count 1, Clifton alleges that he was denied the ability to call a witness during his hearing on Disciplinary Report #202400554/1-PNK in February 2024. But Clifton only received 45 days in segregation as a result of the disciplinary report (Doc. 1, p. 28). Although he alleges that he spent over a year in segregation at Menard, the attached exhibits suggest he did not transfer to Menard until sometime in April 2024 (Doc. 1, p. 56). A grievance Clifton submitted dated August 26, 2024, noted that he transferred from Pinckneyville segregation to Menard segregation on April 24, 2024 (*Id*.). Thus, it appears from the record that Clifton served most, if not all, of his segregation time while at Pinckneyville Correctional Center. Clifton provides various allegations regarding the conditions he faced in Menard's segregation unit, but his pleading is completely silent as to the conditions he experienced while at Pinckneyville. His limited stay in segregation, alone, does not amount to a protected liberty interest. And, without any allegations regarding the conditions he faced in Pinckneyville's segregation unit, the Court finds that Clifton fails to allege that his stint in segregation amounted to an atypical and significant hardship. Thus, his claim in Count 1 is **DISMISSED without prejudice** for failure to state a claim.

**Count 2**

Turning to the due process claim in Count 2, Clifton alleges that he pleaded not guilty at the disciplinary hearing, but his summary report indicated that he pleaded guilty (Doc. 1, p. 18). Clifton further takes issue with the lack of signature from one of the adjustment committee members, Kelsey S. Smith (*Id.*). But to the extent that Clifton alleges that the final summary lacked one of the committee member's signatures, that failure does not amount to a due process violation. Although Clifton alleges that the failure to sign was a violation of the prison's administrative directives, the violation of such a directive does not amount to a due process violation. *See Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) (Section 1983 protects inmates from constitutional violations, not violations of state laws, or prison regulations or policies).

To the extent that Clifton alleges that the committee members based his guilt on the false statement that he pleaded guilty to the charge, Clifton states a claim. Clifton alleges that he actually pleaded not guilty, but the committee members noted in the final summary that he pleaded guilty (Doc. 1, p. 41). The final summary further notes that the committee's decision was based, in part, on Clifton's alleged admission of guilt (*Id.*). Clifton's allegations call into question whether the committee's decision was based on "some evidence." Clifton also received six months in segregation and spent most of that time in segregation at Menard. Clifton describes the conditions he faced at Menard, noting that he was placed in a cell with plumbing and ventilation issues (Doc. 1, p. 21). He was often forced to walk in water tainted with feces and urine, and he had limited access to cleaning supplies (*Id.*). His cell was also infected with bugs, and he was denied

access to the yard (*Id*. at p. 20). The description of the conditions he faced could amount to an atypical and significant hardship. Thus, Count 2 shall proceed against Gregory D. Little, Kelsey Smith, and Christel Crow.

**Count 3**

In Count 3, Clifton takes issue with the lack of a signature on his original disciplinary ticket (Doc. 1, p. 19). He notes that he was eventually issued an amended ticket with the reporting employee's signature and given additional time to prepare for the hearing (*Id*.). At the hearing, Clifton requested that the ticket be expunged as incomplete due to the lack of signature being a violation of 20 Ill. Admin. Code § 504.30(c). Cliton alleges that the ticket was not expunged despite the discrepancy, and his argument for expungement was left out of the final summary (Doc. 1, p. 48). But as previously stated, the violation of an administrative directive does not amount to a constitutional violation. Here, Clifton was provided with notice of the disciplinary report and provided with an updated report with the corrected signature. He also appeared before the adjustment committee and was allowed to make his argument about his issues with the ticket. Nothing in the Complaint suggests that he was denied any due process protections during the hearing. Although his technical argument was not mentioned in the final summary, the report was based on the evidence that he admitted to the facts of the events at the evidentiary hearing (*Id*.). Thus, Count 3 is also **DISMISSED without prejudice**.

### Motion for Counsel

In addition to his Complaint, Clifton filed a motion for counsel (Doc. 3). Clifton notes that he has some college education, but he does not know the laws and procedures

to adequately represent himself. Given the early stage of the litigation process, however, it is difficult to accurately evaluate the need for the assistance of counsel. *See Kadamovas v. Stevens*, 706 F.3d 843, 845 (7th Cir. 2013) ("[U]ntil the defendants respond to the complaint, the plaintiff's need for assistance of counsel ... cannot be gauged.").[2] There is nothing currently pending that would require counsel. Once Defendants have been served and file answers, the Court will enter a scheduling order setting forth the next steps in the litigation process. Should Clifton experience difficulties litigating the case at that time, he may renew his request for counsel. At this time, his motion is **DENIED**.

### Disposition

For the reasons stated above, Count 2 shall proceed against Kelsey Smith, Gregory D. Little, and Christel Crow. Counts 1 and 3, as well as all potential claims against the remaining defendants, are **DISMISSED without prejudice**.

The Clerk of Court shall prepare for Kelsey Smith, Gregory D. Little, and Christel Crow: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons) and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendant's place of employment as identified by Clifton. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and

---

[2] In evaluating the motion for counsel, the Court applies the factors discussed in *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007), and related authority.

the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Clifton, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order**.

If judgment is rendered against Clifton, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Clifton is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  September 22, 2025**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**

## Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**